(No. 23738.—

IN RE ESTATE OF JAMES THOMAS KELLY, Deceased.—(THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NICHOLAS RADIS, Plaintiff in Error.)

*Opinion filed December 10, 1936—Rehearing denied Feb. 4, 1937.*

ODE L. RANKIN, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD H. DEVINE, and MELVIN S. REMBE, of counsel,) for defendant in error.

LEVINSON, BECKER, PEEBLES & SWIREN, (DON M. PEEBLES, of counsel,) *amici curiæ.*

Mr. JUSTICE WILSON delivered the opinion of the court:

By an order of the probate court of Cook county Nicholas Radis and five other persons were adjudged guilty of contempt of court and sentenced to imprisonment in the county jail of Cook county for one year. The order as to Radis was affirmed by the Appellate Court for the First District. Thereafter he prosecuted this writ of error.

The judgment of the Appellate Court as to Julius Waitches, one of the defendants, has been affirmed at the present term of court. (*In re Estate of Kelly, ante,* p. 174.) Reference to the opinion in the companion case discloses that James Thomas Kelly died on February 26, 1935. The defendant Waitches on March 6 filed a document purporting to be Kelly's last will and testament in the probate court. He also filed an application for the issuance of letters testamentary to Radis and Bella Butman. Additional facts and circumstances appearing from the record relating to Radis require consideration.

Radis was chauffeur for John J. Bagdonas, an undertaker, also a defendant in the contempt proceeding. By section 2 of Kelly's will $4500 was bequeathed to Bagdonas. The same section further provided for the payment of six per cent of the estate to Waitches for legal services and four per cent to Radis as co-executor of the will for his services in that capacity. Mrs. Butman was named residuary legatee and appointed executrix. The application for letters testamentary was signed by Radis and Mrs. Butman, and their signatures were acknowledged before the clerk of the court on March 6. From the testimony of the defendant Radis it appears that he knew the will filed in the probate court was a forgery. He testified that he did not know and had never heard of the decedent, Kelly, during the latter's lifetime; that he saw the will for the first time when Mrs. Butman gave it to him for the purpose of obtaining the signature of the defendant Paul P. Zalinck as an attesting witness, and that the latter signed the document as a witness in his presence and at his request.

The defendant strenuously insists that the order of contempt does not show he was present in court when evidence was heard or at the time he was sentenced. The order recites that the judge of the probate court heard each of the six defendants testify in his own behalf with respect to the charge of participating in a fraudulent attempt to cause

the court to admit the spurious will to probate and record. Again, the record further discloses that although the court advised Radis of his constitutional immunity against self-incrimination, Radis voluntarily testified, and that he was present at the time the order of commitment was entered.

The contention that the record fails to show contemptuous conduct on the part of Radis is without merit. From his own narration it appears that he procured the signature of an attesting witness to a document purporting to be Kelly's will which contained provisions favorable to Bagdonas, Waitches, Mrs. Butman and himself, with knowledge not only of Kelly's death but also of the contents of the false will. He nevertheless sought to obtain its probate. To accomplish this purpose he appeared in the probate court, where he caused his signature to the application for letters testatmentary to be acknowledged before the clerk of the court. The conduct of the defendant was contemptuous in the extreme. His position with respect to the character of the contempt differs from that of the defendant Waitches. The latter denied participation in the conspiracy charged. Radis, however, admitted complete complicity in a plan deliberately designed to thwart the processes of the probate court by using them illegally to divert a substantial estate, to himself and his associates. He cannot now complain that he was not afforded an opportunity to deny guilt and escape punishment for his contemptuous acts. The petition for letters, although signed and filed in the clerk's office, was addressed to and presented to the judge of the probate court. The contempt was committed in the presence of a constituent part of the court and was punishable as a direct contempt. *In re Estate of Kelly, supra.*

Other contentions, and the argument supporting them, are the same as advanced by Waitches. They have been decided adversely to Radis. *In re Estate of Kelly, supra.*

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*