131 Ill. App.2d 492 (1971)
268 N.E.2d 463
THE PEOPLE ex rel. ILLINOIS STATE DENTAL SOCIETY et al., Plaintiffs-Appellees,
v.
VAL TAYLOR d/b/a BOULEVARD DENTAL LABORATORY, Defendant-Appellant.
No. 54440.
Illinois Appellate Court  First District.
February 23, 1971.
Rehearing denied March 19, 1971.
Robert A. Sprecher, of Chicago, (Crowley, Sprecher, Barrett & Karaba, of counsel,) for appellant.
John R. Porter, of Chicago, (Peterson, Lowry, Rall, Barber, & Ross, of counsel,) for appellees.
Judgment affirmed.
Mr. JUSTICE STAMOS delivered the opinion of the court:
Defendant was found guilty of contempt of court. He was sentenced to six months in jail, fined $300.00 and assessed $1600.00 in costs. Defendant appeals and presents the following contentions:
1. The trial court deprived defendant of his constitutional right to a jury trial.
2. Defendant was entrapped into committing the acts found to be contemptible.
3. Defendant was not proved guilty beyond a reasonable doubt.
*493 On August 1, 1962, a decree was entered permanently enjoining defendant from practicing dentistry. Among the prohibited activities were:
Offering directly to the user or prospective user thereof, by advertisements contained on business cards distributed or made available to the public, or by any other media, to furnish, supply, construct, reproduce, reline or repair prosthetic dentures (sometimes known as "plates"), bridges or other substitutes for natural teeth;
Furnishing, supplying, constructing, reproducing or repairing, or offering to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as "plates"), bridges, or other substitutes for natural teeth to the user or prospective user thereof;
Practicing dentistry under the name of a company, corporation, association or trade name.
On February 9, 1966, defendant was found guilty of contempt of court for violating the injunction and fined $1,000.00. Three years later, on April 24, 1969, an order was entered to show cause why defendant should not be again adjudged guilty of contempt of court for violating the terms and provisions of the injunction. Hearings were commenced on May 29, 1969.
Leroy C. Bell, an investigator, testified that he went to Boulevard Dental Laboratory on September 12, 1968, and requested defendant to make an upper dental plate for him; that defendant agreed to do so for the sum of $100.00; that he returned to the Laboratory on three separate occasions during which time defendant took impressions and fitted an upper plate; and that he subsequently returned to the Laboratory to have further adjustments made. He further testified that he introduced one Ellsworth Bound to defendant; that defendant agreed to make an upper dental plate for Bound for $100.00; and that he accompanied Bound to the Laboratory on three separate occasions during which time defendant took impressions and fitted an upper plate for Bound. On cross-examination, he testified that he wore an old pair of trousers and a jacket and was not dressed as he is now, as a professional man; that he doesn't recall defendant saying that defendant didn't make plates for the public; and that he never told defendant, "I can't eat. I make very little money as a carhop. I am losing weight. I am sick. No one wants to work on colored people. Will you help me?"
Ellsworth Bound, an investigator, testified that he first met defendant on February 15, 1969, when, accompanied by Bell, he went to Boulevard Dental Laboratory to have an upper dental plate made; that defendant agreed to make the plate for $100.00; and that he subsequently returned to the Laboratory on two other occasions accompanied by Bell during which time defendant took impressions and fitted him with *494 an upper plate. On cross-examination, he testified that he wore a blue suit and sportshirt with no tie to the Laboratory; that he does not recall Bell telling defendant, "Here is a friend of mine, Mr. Bound. He is not working. He hasn't any money. He is living off his wife's salary. He is going to lose his health, he can't eat"; and that he never mentioned anything to defendant about race, creed or color.
Defendant testified that he first saw Bell on September 12, 1970, when Bell came to the Laboratory and asked his wife if he would make an upper plate; that his wife said that he did not make plates for the public; and that Bell returned a week later and again inquired about the possibility of having a denture made stating that he, Bell, was just a carhop and couldn't afford a dentist. He further testified that Bell asked whether the refusal to make the plate was based on the fact that Bell was a Negro; that Bell's eyes became misty; and that he finally agreed to make the plate for the sum of $100.00.

OPINION
 1 Defendant contends that since the proceedings were clearly in the nature of a serious criminal contempt prosecution, he was constitutionally entitled to a trial by jury. Defendant further contends that he is entitled to a new trial since this right was not understandably, expressly or affirmatively waived in open court nor did the court advise or admonish him of this right.
However, relators maintain that the failure to comply with an injunction decree does not constitute criminal contempt but rather civil contempt, citing Hake v. People (1907), 230 Ill. 174, which held that an action for violation of an injunction in a labor dispute constituted a civil proceeding. Relators also cite People v. Spounias (1959), 20 Ill. App.2d 184, wherein the court cited Hake, supra, and held that failure to comply with a decree enjoining defendant from the practice of dentistry without a license constituted civil contempt.
However, in a subsequent case, People ex rel. Chicago Bar Assoc. v. Barasch (1961), 21 Ill.2d 407 the court stated at page 409:
"Contempt proceedings, while usually called civil or criminal, are strictly speaking, neither. They may best be characterized as sui generis, and may partake of the characteristics of both. (Citing cases). Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. (Citing cases). These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and *495 even imperceptible. (Citing cases). A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of In re Nevitt, (8th cir.) 117 Fed. 448, `he [the contemnor] carries the key of his prison in his own pocket.'"
On the basis of this standard the court therein held an action for the unauthorized practice of law criminal contempt.
The Barasch standard was subsequently applied by this court in Board of Jr. College v. Cook County Teachers Union (1970), 126 Ill. App.2d 418 wherein we held that violation of a temporary injunction restraining the Union from causing, inducing or encouraging a strike or picket line constituted criminal contempt.
In applying the Barasch standard to the present set of circumstances, we find that the instant proceedings constituted an action for criminal contempt. The sentence imposed by the trial court was clearly inflicted for the purpose of punishment rather than coercion.
 2 In Bloom v. Illinois (1968), 391 U.S. 194 the United States Supreme Court held that although criminal contempt is not a crime requiring a jury trial regardless of the penalty, serious contempts necessitate jury trials. Applying the rule in Cheff v. Schnackenberg (1966), 384 U.S. 373 that when the legislature has not expressed a judgment as to the seriousness of the offense by fixing a maximum penalty which may be imposed, the penalty actually imposed is the best evidence of its seriousness, the court reversed the conviction and remanded the cause thereby deeming a 24 month sentence a serious contempt.
The principle as enunciated in Bloom, supra, was subsequently applied by the Supreme Court of Illinois in In re Estate of Melody (1969), 42 Ill.2d 451 which reversed and remanded a one year conviction for criminal contempt. In holding that a one year sentence constituted a case of serious contempt, the court stated at page 455:
"Neither the Bloom nor the Duncan cases, however, adjudicated the question of whether contempt punishable by one-year imprisonment is, by virtue of that sentence, a sufficiently serious crime to require a jury trial. (De Stefano v. Woods, 392 U.S. 631, 633, 20 L.Ed.2d 1308.) That is the issue presented here. In resolving that question we note that in Duncan (391 U.S. at 161) the United States Supreme Court commented that under Federal law petty offenses, for which no jury trial is required, are limited to those involving no more than six-months sentences; and that in only two States is the right to jury trial denied for crimes punishable for longer than six months. Under those guidelines the one-year imprisonment imposed on defendant Owens rendered *496 this criminal contempt a serious offense, requiring a jury trial under the mandate of recent decisions of the United States Supreme Court. Bloom v. Illinois, 391 U.S. 194; Duncan v. Louisiana, 391 U.S. 145; Cheff v. Schnackenberg, 384 U.S. 373; United States v. Barnett, 376 U.S. 681."
In applying the same Federal guidelines utilized in Melody, we find that the present proceedings do not constitute an action of serious criminal contempt which would require a jury trial as dictated by Bloom, supra, since defendant was sentenced to a six month term. Therefore, defendant's contention as to jury waiver need not be decided.
 3 Defendant next contends that the acts of the investigators constituted entrapment. The issue of entrapment is, as stated in People v. Strong (1961), 21 Ill.2d 320, 324, "whether the defendant was induced to perform an unlawful act or whether he was apprehended by lawful artifice in the execution of a criminal act of his own conception." Simply affording the defendant the opportunity to commit the wrongful act does not constitute entrapment. People v. Boyden (1948), 400 Ill. 409.
We find no wrongful act on the part of the investigators in providing defendant with the opportunity to violate the injunction. Defendant was not coerced into making the dental plates, but did so of his own free will. Moreover, in the case of Bound, defendant offers no more evidence of alleged inducement other than Bound's introduction by Bell which tends to show defendant's predisposition to violate the injunction.
Defendant next contends that he was not convicted beyond a reasonable doubt. However, after reviewing the evidence we find that defendant was proved guilty beyond a reasonable doubt. Indeed, defendant himself admitted the acts alleged which were violative of the injunction.
Therefore, the judgment is affirmed.
Judgment affirmed.
LEIGHTON, P.J., and McCORMICK, J., concur.