The People of the State of Illinois, Plaintiff-Appellee, *v.* Omer Preston Brown, Defendant-Appellant.

(No. 74-342;

Second District (2nd Division)—August 1, 1975.

Robert R. Canfield, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The circuit court found defendant in contempt and on that offense sentenced him to 6 months in the county jail, such time to be served at the termination of his penitentiary sentence. On appeal, defendant contends that the record does not establish that his conduct constituted contempt, that if he were in contempt, such contempt was indirect, and that the sentence was excessive.

Defendant had been convicted of involuntary manslaughter. While serving his sentence for this conviction, he filed a pro se post-conviction petition (Ill. Rev. Stat. 1973, ch. 38, § 122—1 et seq.), alleging his constitutional rights were violated in that he was denied his right to poll the jury, he was illegally arrested, and his sentence was excessive. Thereafter, through an attorney, defendant filed additional counts alleging that his conviction was obtained as a result of an unconstitutional search and seizure in that he never consented to the search of his home during which incriminating evidence was found, that he was never indicted for involuntary manslaughter, and that the trial judge gave the jury an unlawful instruction. Defendant signed an affidavit attesting to these allegations.

At a hearing attended by defendant's counsel but not the defendant, the first five counts of the petition were dismissed. A subsequent hearing was had on the sole remaining count which alleged that the trial judge gave unlawful jury charge. During the proceedings, defendant readily volunteered that certain of the allegations in the petition were untrue and stated:

"If one lie would get me out of the penitentiary, I don't want it. I

see faults in there [the post-conviction petition]. I gave permission to go back and search my house and they wrote in this here [petition] that was filed for it coming to court like I never gave anyone permission, and I don't want to come in and lie to you in no way. I am not here to lie. I didn't fight for this kind of stuff in World War II."

Defendant stated that at the time he signed the affidavit to the amended petition he knew it contained false statements, that he so told the notary, and that the notary responded that perhaps this was the way defendant could get back in court. Defendant asserted that he signed the affidavit in the belief that he must do so in order to "get this lawyer off [his] back" and talk to the judge. Defendant called a witness who was present at the time he signed the affidavit, and the witness corroborated his statements.

It appears that the misstatement in the affidavit was the claim that defendant had not given his consent to the search of his home. While defendant's testimony was confused and rambling, he stated at the hearing that he had given permission. When asked if there were other incorrect statements in the petition, defendant responded, "I never looked at all of them * * *. When I saw something was wrong I took it this way: If you tell one lie, if I tell this Judge a lie, I'll tell two." The trial judge denied defendant's petition and held him in contempt of court for having signed an affidavit which he knew to be false.

■■■ Without merit is defendant's contention that the record failed to establish conduct which warranted his being found in contempt. The law is clear that filing with the clerk of the court any document containing contemptuous matter constitutes contempt. (*In re Estate of Kelly,* 365 Ill. 194, 196 (1936); *People v. Jashunsky,* 51 Ill.2d 220, 224 (1972).) This rule is specifically applicable to post-conviction petitions containing false allegations. (*People v. Bennett,* 51 Ill.2d 282 (1972).) Not only did defendant's filing of admittedly false statements constitute contempt, but that contempt was direct, not indirect as he would assert. (*In re Estate of Kelly,* 365 Ill. 194, 196 (1936); *People v. Jashunsky,* 51 Ill.2d 220, 224 (1972).) Where, as here, a direct contempt is committed in open court, the trial judge may proceed upon his personal knowledge of the facts and punish the offender summarily without entering any rule against him and without conducting a hearing. *People v. Jashunsky,* 51 Ill.2d 220, 224 (1972).)

Defendant's final argument is that even if his conduct was contemptuous, it was not sufficiently serious to warrant a sentence of 6 months' imprisonment. Punishment for contempt rests within the discretion of the trial judge. The filing of false allegations in a post-conviction

petition, requiring an over-burdened court to conduct unnecessary hearings, cannot be viewed lightly. (See *People v. Bennett,* 51 Ill.2d 282, 287 (1972).) The trial judge was within his power to impose upon defendant a sentence of 6 months for contempt.

■■ In this case, however, mitigating circumstances exist which distinguish it from *People v. Bennett.* The hearing conducted did not relate to the count which contained the false allegation; that count had already been dismissed. Under such circumstance, defendant's false swearing would never have come to the court's attention but for defendant's candor and concern for honesty. Furthermore, we note that his signing of the affidavit was based upon a misguided belief, supported by the notary public, that such signing was necessary in order for him to have an opportunity to present his claims to the judge. We in no way condone defendant's conduct but, under the circumstances, feel that justice would best be served by our affirming the judgment of contempt against defendant and vacating the 6-month sentence.

Judgment affirmed; sentence vacated.

RECHENMACHER, P. J., and DIXON, J., concur.