DALE HOGA *et al.*, Plaintiffs-Appellants, *v.* CHARLES CLARK *et al.*, Defendants-Appellees.

Fifth District    No. 81—454

Opinion filed March 28, 1983.

1052

Marvin W. Goldenhersh, of Goldenhersh & Goldenhersh, P.C., of Belleville (Marvin Barnes, of counsel), for appellants.

No brief filed for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiffs, Dale and Irene Hoga, appeal from a judgment of the circuit court of Madison County finding them in "indirect civil contempt" of court and sentencing them to five and four months in jail respectively. Plaintiffs were found to have violated a previous order of the court enjoining them from interfering with the construction of a fence separating their property from that of defendants Charles and Beulah Clark. In this appeal plaintiffs contend (1) the trial court erred in denying their motion for change of venue based upon prejudice of the trial judge; (2) the evidence against them was insufficient to support the court's finding of contempt; and (3) the punishment imposed by the trial court was inappropriate and not supported by the record.

Initially, we note that the defendants-appellees have not filed a brief in this court. We will, however, consider the merits on the appeal pursuant to the authority of *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

The proceedings giving rise to this appeal were commenced on June 12, 1980, when the plaintiffs filed a complaint for injunctive relief to prevent the defendants from encroaching upon their property. The parties own adjoining lots located in Langen Heights subdivision,

Madison County, Illinois. The complaint alleged that the defendants had threatened to encroach upon the plaintiffs' property by building a fence that would be partly on their lot. The defendants filed an answer to the complaint and a counterclaim in which they alleged that the plaintiffs had encroached upon the defendants' property and had thwarted efforts to survey the premises by cutting lines and moving survey stakes and iron pipes left by the surveyors.

In an order entered October 30, 1980, the trial court noted that the issue of ownership and boundaries of the subject property had been settled by an order entered in a previous suit on November 7, 1977. The court ordered that the parties be bound by this previous determination of ownership and enjoined each of the parties from "harassing, bothering, interfering with, molesting, striking, or at any way contacting any of the opposite parties ***." The court further stated that "each of the parties is enjoined from at any way encroaching upon the property of the other as described and allotted by [the November 1977 order] or from moving any survey stakes, iron pipes or other indicia of the boundaries of [the respective lots]." The court additionally stated that it would retain continuing jurisdiction of the parties and the subject matter of the suit.

On January 30, 1981, upon stipulation of the parties, the court ordered that the parties arrange to have the subject property surveyed so that permanent stakes could be placed at the lot corners to establish the boundaries of the respective lots. On April 7, 1981, the defendants filed a motion to enforce this order, alleging that the plaintiffs had refused to pay their portion of the survey costs. The court entered an order on April 20, 1981, directing the plaintiffs to pay for the survey, which was to be made within 30 days.

On July 28, 1981, an evidentiary hearing was held on the enforcement of the court's order of October 30, 1980. The court found "that the plaintiffs Dale and Irene Hoga have wilfully refused to obey this court's order and are in contempt of court." The order of July 28, 1981, continued as follows:

"A. The defendants shall be unmolested by the plaintiffs during the erection of a fence along the property line dividing the parties' property according to the court ordered survey.

B. The plaintiffs shall not trespass across lot 43 of the defendants' property.

C. Defendants' contractor is permitted to remove any portion of plaintiffs' fence which crosses defendants' property for the purpose of erecting defendant's fence.

D. The court reserves the issue of punishment for the plain-

tiffs' contempt until further hearing of this court.

E. Plaintiffs are warned that any harassment of the defendants' agents or of the defendants or any further violation of this court's order will subject them to an immediate hearing on the issue of contempt.

F. Plaintiffs shall be responsible for any acts of their agents in violation of this order."

The plaintiffs filed a motion to reconsider this order which was denied on July 30, 1981.

On August 11, 1981, the defendants filed a petition for contempt citation in which they recited the provisions of the order of July 28, 1981, and stated:

"Contrary to said order, plaintiffs have repeatedly trespassed on defendants' property since the entry of said order, have threatened defendants with firearms, have threatened and harassed defendants and defendants' contractor building the fence with clubs, have uprooted one fence post and almost uprooted a second fence post, and continually along with other members of their family threatened defendants and voiced their total defiance and contempt of the court, the order of July 28, 1981, and Judge Hildebrand."

In a later petition the defendants additionally alleged that, on August 27, 1981, the plaintiffs had destroyed a substantial portion of the defendants' fence.

On August 31, 1981, the plaintiffs filed a motion for change of venue, alleging prejudice on the part of trial judge Thomas Hildebrand, who had entered the previous order in the case. The court denied this motion and the cause proceeded to trial on the defendants' contempt petition.

At a hearing held on September 3, 1981, defendant Beulah Clark testified that following the court's order of July 28, 1981, she and her husband contracted with B & L Fence Company to have a fence erected along their property line. During the building of that fence, plaintiff Irene Hoga was present every day harassing the contractors and threatening them with lawsuits. Plaintiffs' son Robin Hoga cut the guide strings used by the contractors to lay the fence, but Irene Hoga was not present when the cutting was going on. Both the Hogas and the Clarks called the sheriff on several occasions when the things got "out of control" and the workers could not work. The Hogas also had the State Police come out to look over the court's order when the contractors first began work on the fence.

During the construction of the fence a couple of fence posts disap-

peared, but Mrs. Clark did not see what happened to them. On the evening of August 27 after the fence was completed, Mrs. Clark was in her ceramics shop waiting on a customer when she heard the breaking of the fence. She ran out and saw Irene Hoga and her son Robin breaking the fence. Irene was using a lead pipe which she carried all the time. Dale Hoga was present and stated that the Clarks had stolen his waterline by putting the fence over it and that the Hogas were going to destroy the fence. Dale Hoga did nothing at the time, however, because the sheriff arrived and calmed things down. Another portion of the fence was later damaged, but Mrs. Clark did not see how that was done.

Mrs. Clark testified that since the court hearing on July 28, Dale and Irene Hoga had told both the Clarks and their contractors that Judge Hildebrand was "nothing" and that there was no way he could control the Hogas to keep them off the disputed property. In addition, both Dale and Irene Hoga had trespassed on the Clarks' property every day.

On cross-examination Mrs. Clark stated that since the hearing on July 28, there had been no incidents between the parties involving firearms.

Defendant Charles Clark testified that after the contractors set the steel posts for the chain link fence, he saw Randy Hoga, the plaintiffs' son, remove one of the posts, but he did not see Dale or Irene Hoga that evening. He did not observe any other damage being done to the fence and did not hear either of the Hogas comment on the court's order of July 28.

The defendants' son, Victor Clark, testified that he observed the Hogas, mainly Randy and Irene, harassing the workers who were building the fence. Dale Hoga was there on a couple of occasions. On the night of August 27, Robin Hoga tried to run him down in his car as he (Victor) was standing on the Clark's parking lot. Victor then went inside to phone the police and heard the Hogas beating on the fence but did not observe them.

Randy Jett, an employee of Mrs. Clark, was present on the evening of August 27 and saw Irene Hoga jab at the fence with a club or iron pipe and damage the fence.

Plaintiff Irene Hoga testified on her own behalf that she did not believe the court's order of July 28 was final because her attorney had told her he would go back into court to get another survey of the disputed property line. She denied having threatened or molested the workers constructing the fence and stated that she never encouraged her children to commit aggressive acts toward the Clarks. Mrs. Hoga

stated that she had not knowingly trespassed on the Clarks' property because it had never been established where the property line was.

It was Irene Hoga's testimony that Victor Clark was responsible for damaging the fence on the night of August 27. Victor came onto the Hogas' property that evening, and when Dale Hoga told him to leave, Victor threw a piece of sewer rock at him, injuring him on the side. The police were called and when they arrived, Victor was on the fence tearing it down. Mrs. Hoga stated that she wouldn't touch the fence and was glad it was up.

Dale Hoga testified finally that he never encouraged any of his family to damage the fence and knew of no damage caused by any family member. He did not encourage anyone in his family to molest or harass the workers putting up the fence and had not personally trespassed upon the Clarks' property.

At the conclusion of the testimony, the court found that "damage was done to the fence either by the Hogas or persons acting at their direction [and] that Mrs. and Mr. Hoga did deliberately [and with intent] intimidate and harass the persons constructing that fence." The court further noted that, in its order of July 28, it had found the Hogas in contempt for moving the surveyors' pins and cutting and moving their lines. The court then entered its written judgment as follows:

> "The Court having heard the testimony of witnesses and arguments of counsel does hereby find Dale Hoga and Irene Hoga to be in indirect civil contempt based upon their actions in causing and allowing to be caused harassment and molestation of the persons constructing a fence pursuant to the July 28, 1981 Court Order and for damage done to the fence by them and by their agents and hereby sentences them as follows: For the contempt of Court resulting from their actions subsequent to July 28, 1981, and for their actions which resulted in a finding of contempt on July 28, the sentencing of which was deferred pursuant to paragraph (d) of the Court's Order that date, the Court does hereby order that the Plaintiff Dale Hoga be committed to the custody of the Madison County Sheriff for a term of five months and that the Plaintiff Irene Hoga be committed to the custody of the Madison County Sheriff for a term of four months, mittimuses and commitments to issue instanter. ***"

The plaintiffs have appealed from this judgment, citing several contentions of error. Before we consider these issues, however, it is necessary to determine the nature of the contempt here involved. While the trial court expressly found that the plaintiffs were guilty of

"indirect civil contempt," we believe the plaintiffs' acts may be more properly characterized as constituting indirect criminal contempt. The distinction between civil and criminal contempt, though exceedingly difficult to apply, is nevertheless important due to the procedural and substantive requirements which attach to each.

It is generally said that criminal contempt consists of acts tending to lessen the dignity or impede the process of the court, and such proceedings are instituted to vindicate the authority of the court. Civil contempt ordinarily consists of failing to do something ordered by a court in a civil action for the benefit of the opposing litigant, and proceedings are instituted to compel or coerce obedience to the order or decree. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417; *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737, *modified on other grounds* (1976), 65 Ill. 2d 206, 357 N.E.2d 477.) Whereas imprisonment for civil contempt is coercive in nature and can generally be avoided by compliance with the court's order, imprisonment for criminal contempt is imposed to punish for past contumacious conduct and usually consists of a definite term. (*People v. Marcisz.*) Contempt may be further classified as direct or indirect depending upon whether the contemptuous acts occur within or out of the presence of the court. *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 340 N.E.2d 141.

In considering whether the plaintiffs' contempt in the instant case was civil or criminal, then, we must determine whether, in the totality of the circumstances, the proceeding was coercive or punitive in nature. (*People v. Marcisz; In re Marriage of Miller* (1980), 88 Ill. App. 3d 370, 410 N.E.2d 649.) While the contempt at issue arose out of the commission of acts prohibited by court order in a civil action, this alone does not render it civil in nature. (See *Aurora Steel Products v. United Steelworkers* (1981), 94 Ill. App. 3d 97, 418 N.E.2d 492.) Indeed, as the *Marcisz* court noted, "it is difficult to conceive how a consummated act of violating an expressly prohibitory injunction could be dealt with in a coercive manner." (32 Ill. App. 3d 467, 473, 334 N.E.2d 737, 741.) In *People v. Marcisz* an estranged husband had been enjoined from going to his wife's residence. Upon his second disobedience of the injunction, he was found to have been in criminal contempt. The court stated that although the husband's imprisonment was undoubtedly of benefit to his wife, the opposing litigant, the contempt finding was based upon the husband's wilful violation of the court's order. In view of the nature of the husband's conduct and the punishment imposed, the court found that he was guilty of criminal contempt. *Cf. Aurora Steel Products v. United Steelwork-*

*ers*, where a labor union's actions in violation of a prohibitory injunction constituted criminal contempt; see also *People ex rel. Illinois State Dental Society v. Taylor* (1971), 131 Ill. App. 2d 492, 268 N.E.2d 463; *American Cyanamid Co. v. Rogers* (1974), 21 Ill. App. 3d 152, 314 N.E.2d 679.

■ In the instant case we find similarly that the nature of the plaintiffs' conduct and the type of punishment imposed indicate that the plaintiffs' contempt was criminal rather than civil. In finding the plaintiffs in contempt, the trial court specifically referred to the Hogas' past actions in damaging the fence and intimidating and harassing the persons constructing the fence. Indeed, the court stated that such actions were deliberate and intentional, thus fulfilling the intent requirement of criminal contempt. (See *People v. Edwards* (1979), 69 Ill. App. 3d 626, 387 N.E.2d 969.) Further, the punishment imposed was for a definite term with no provision whereby the plaintiffs could purge themselves of contempt by complying with the court's order. The disparity of the sentences themselves indicates a punitive purpose, and this is borne out by the trial court's comment in sentencing the plaintiffs that "a less severe sentence may be in order [for Mrs. Hoga] but not by much." We believe, therefore, that the circumstances surrounding the court's finding of contempt belie its characterization of that contempt as civil and that the plaintiffs' contempt was instead criminal in nature. Since the contemptuous acts were committed outside the presence of the court, the contempt may be further characterized as indirect.

■ Turning then to the plaintiffs' contentions of error on appeal, we first consider whether, in light of the standards applicable to indirect criminal contempt proceedings, the trial court erred in denying the plaintiffs' motion for change of venue based upon prejudice of trial judge. Although such proceedings are not strictly criminal in nature, a motion for substitution of judge in a case involving indirect criminal contempt is governed by section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—5) as well as by section 21a of "An Act to revise the law in relation to change of venue" (Ill. Rev. Stat. 1979, ch. 110, par. 552, now Ill. Rev. Stat. 1981, ch. 110, par. 2—1001(m)). (*People v. Wright* (1974), 20 Ill. App. 3d 96, 312 N.E.2d 727; *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 386 N.E.2d 398.) As the instant contempt finding did not arise from an attack on the conduct or character of the trial judge, the latter provision has no application here. The plaintiffs, however, seek to invoke the venue provision pertaining to criminal cases, contending that under the rule that venue provisions are to be liber-

ally construed, their motion should have been allowed where the record showed a good faith basis for the allegation that Judge Hildebrand was prejudiced against them.

■■ ■ While it is true that a motion for substitution of judge is to receive a liberal rather than strict construction, the movant must comply with the statutory requirements for the motion and must file it at the earliest practicable moment. (*People v. Ganci* (1978), 57 Ill. App. 3d 234, 372 N.E.2d 1077; see *People v. Spurlark* (1978), 67 Ill. App. 3d 186, 384 N.E.2d 767.) Moreover, such a motion must be filed before the trial judge has ruled upon a substantive issue of the case, as a litigant may not delay until he has ascertained the court's attitude on the merits of the case before seeking a change of venue based on prejudice. (*People v. Lawrence* (1963), 29 Ill. 2d 426, 194 N.E.2d 337; *People v. Evans* (1979), 75 Ill. App. 3d 949, 394 N.E.2d 710.) In the instant case the plaintiffs did not file their motion for substitution of judge until three days before the September 3, 1981, hearing on the contempt petition. However, Judge Hildebrand had already found the plaintiffs in contempt on July 28, 1981, for violation of an order in the underlying case. The September 3 hearing involved further acts of contempt and did not constitute a new proceeding for purposes of a section 114—5 motion for substitution of judge. The plaintiffs could not wait until the judge had ruled adversely to them in enforcing its order and then claim prejudice on the part of the trial judge. Thus, the court's finding on July 28 constituted a substantive ruling in the criminal contempt proceeding that rendered the plaintiffs' subsequent motion untimely. See *People v. Ganci*.

■■ We note, moreover, that the plaintiffs' motion contained no specific allegations to indicate prejudice on the part of Judge Hildebrand, and the record is void of any evidence, either by way of supporting affidavit or testimony, that the plaintiffs could not receive a fair trial before Judge Hildebrand. (*Cf. People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 349 N.E.2d 454, where the defendant's section 114—5(c) motion for substitution of judge was properly denied in the absence of supporting affidavit or testimony.) The burden rests not upon the court to justify retention of a case before it, but upon the one seeking substitution of judge to show that prejudice will result if his motion is not granted. (*People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867; *People v. Ganci; People v. Breitweiser*.) In their brief on appeal, the plaintiffs seek to substantiate their claim of prejudice by reference to Judge Hildebrand's actions during the hearing of September 3, 1981, on the contempt petition. Our review of the record, however, fails to convince us that Judge Hildebrand expressed preju-

dice against the plaintiffs. We therefore find no error in the trial court's denial of the plaintiffs' motion for substitution of judge.

The plaintiffs next contend that the evidence adduced at the hearing on September 3 was insufficient to support the court's finding of contempt. They note initially that the court failed to specify in its order the facts upon which the contempt finding was based. This, however, does not constitute error where, as here, the record contains a report of proceedings which affords an adequate basis for review. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1.) Rather, this court may look to the record in the instant case, which contains both the petition alleging specific acts of contempt and the testimony of the defendants' witnesses, to determine whether the court's finding of contempt is substantiated. See *People v. Brigham* (1964), 47 Ill. App. 2d 444, 198 N.E.2d 106; *Hellige v. Hellige* (1977), 50 Ill. App. 3d 209, 365 N.E.2d 220.

Upon our review of the record, we are unable to say with certainty that the evidence was sufficient to support the trial court's finding of contempt. As we have noted previously, the nature of the plaintiffs' conduct and the nature and purpose of the punishment imposed by the court lead to the conclusion that the plaintiffs were found to be guilty of criminal rather than civil contempt. As such, they were entitled to be proved guilty beyond a reasonable doubt. (*People ex rel. Chicago Bar Association v. Barasch; People v. Edwards.*) From the court's characterization of the plaintiffs' contempt as "civil," however, it follows that the trial court applied a "preponderance of the evidence" standard applicable to such proceedings (see *People ex rel. Rusch v. Fusco* (1947), 397 Ill. 468, 74 N.E.2d 531; 12 Ill. L. & Prac. *Contempt* sec. 78 (1955)). It is axiomatic that factual disputes requiring evidence to be weighed are solely the province of the trier of fact. (See *Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216.) In the instant case, the evidence of the plaintiffs' actions was controverted and much of it was circumstantial in nature. Thus, while we find that the record contains evidence upon which the trial court could have based a finding of criminal contempt, it is not for this court to determine, in light of the strong indication to the contrary, that the trial court did, in fact, find the plaintiffs to be guilty beyond a reasonable doubt of criminal contempt. (*Cf. Aurora Steel Products v. United Steelworkers*, where the reviewing court, in the absence of any indication as to what standard of proof the court used in reaching its finding of contempt, found that evidence which "clearly" indicated that contemptuous acts had been committed was sufficient to prove beyond a reasonable doubt that the defendant was

guilty of criminal contempt.) We therefore remand this cause to the trial court to determine whether, under the applicable standard of proof, the evidence was sufficient to render the plaintiffs guilty of criminal contempt.

■■ The plaintiffs finally contend that the sentences of five months' imprisonment for Dale Hoga and four months' imprisonment for Irene Hoga was unsupported by the evidence. It is well settled that the punishment to be imposed in cases of contempt is a matter within the sound discretion of the trial court. (*People v. Brown* (1975), 30 Ill. App. 3d 828, 333 N.E.2d 476; see 12 Ill. L. & Prac. *Contempt* sec. 102 (1955).) Here, the punishment imposed was reasonable in light of its purpose to punish past misconduct which constituted an affront to the dignity of the court and served to impede its process.

■■ ■ Upon our review of the record, however, we find no basis for the imposition of a longer sentence for plaintiff Dale Hoga. From the defendants' testimony, it appears that Dale Hoga's only actions in violation of the court's order were trespassing on the defendants' property and making verbal threats toward them. He was not implicated in damaging the fence or interfering with its construction. Further, the evidence is insufficient to show that Robin or Randy Hoga acted as his agents. Since the sentences were based in part upon the actions of the plaintiffs which resulted in the July 28 contempt finding, a more severe sentence for Dale Hoga may have been justified by his actions at that time. However, the court made no specific findings of fact in its July 28 order, and we have no record of the July 28 proceedings on review. On the basis of the record before us, then, we find that the trial court abused its discretion in imposing a more severe sentence for Dale Hoga.

For the foregoing reasons, the instant cause is affirmed in part and reversed in part, and we accordingly remand it to the trial court for proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part; and remanded.

KASSERMAN and KARNS, JJ., concur.