GENE ARMENTROUT, Plaintiff-Appellee, *v.* GERRY L. DONDANVILLE, Kane County State's Attorney, Defendant-Appellant.

Second District Nos. 77-159, 77-215 cons.

Opinion filed January 19, 1979.

Douglas Drenk and Lee A. Marinaccio, both of A. E. Botti Law Offices, of Wheaton, for appellant.

Robert F. Casey, Special State's Attorney, of Geneva (Gerald M. Sheridan, Jr., Special Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Gerry L. Dondanville, appeals from two trial court orders, one finding him in contempt of court and imposing a fine of $1000, and the second, an order denying his motion for the appointment of a special assistant state's attorney to represent him in this appeal. To resolve the issues raised in these appeals, a detailed recitation of the facts and history of the proceeding in the trial court is required and is set out below.

Plaintiff, Gene Armentrout, and defendant were opposing candidates for the Republican nomination for the office of Kane County State's Attorney; at the time suit was filed, the defendant was the incumbent state's attorney. On March 9, 1976, plaintiff filed a complaint against defendant alleging that defendant was an "interested party" within the meaning of section 6 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1975, ch. 14, par. 6)[1] and therefore he should be replaced as state's attorney in the investigation of certain matters relating to alleged criminal conduct on the part of plaintiff; the complaint also requested that a special prosecutor be appointed to conduct such investigation. The trial court, finding defendant to be an "interested party" within the meaning of section 6, issued an injunction enjoining defendant and his assistant state's attorneys from presenting any evidence to the Kane County grand jury involving allegations of violations of statutes or ordinances by plaintiff. Further, on March 18, the trial court, in an ex parte order, appointed Robert Casey as special prosecutor to investigate the alleged criminal conduct on plaintiff's part in a matter

---

[1] "Whenever the attorney general or state's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, ° ° °."

involving one Richard Montress; the order also required defendant to turn over to the special prosecutor forthwith all information including all documents in his possession regarding the "Montress affair." On April 7, defendant filed an answer to the complaint; subsequently, on April 14, defendant was personally served with a copy of the ex parte order of March 18. Defendant filed a motion alleging that as he was not in default under the complaint, having filed his answer 29 days after service of summons, the court was without jurisdiction to enter its order of March 18; defendant also petitioned for a change of venue. Following continuances by both sides, plaintiff filed an answer to defendant's motion to vacate and objections to defendant's petition for a change of venue.

On May 3, the trial court denied defendant's motion to vacate the order of March 18 and defendant's petition for a change of venue, on the ground that an issue of substance had been previously decided; however, the order further allowed defendant to renew his motion for a change of venue if further litigation regarding this matter arose. On May 10, the defendant filed an affidavit stating that the documents and information requested had been turned over to the special prosecutor pursuant to the order of March 18; the special prosecutor filed his receipt acknowledging delivery of those items. On June 28, the trial court entered a supplemental order changing the designation of special prosecutor to that of special state's attorney and granted the special state's attorney the same powers and authorities in regard to the investigation as would be possessed by the Kane County State's Attorney.

On July 16, the special state's attorney moved to expand his authority to allow him to investigate any and all alleged criminal conduct relating to plaintiff while he was an assistant state's attorney, as opposed to merely matters concerning the "Montress affair." Defendant's first assistant state's attorney appeared before the court to request a continuance. The trial court denied defendant's motion for a continuance and in a written order dated July 21, ordered defendant and all his personnel to turn over to the special state's attorney any and all additional material pertaining or relating to any alleged criminal activity on the part of plaintiff; further, defendant and his staff were ordered to return to the circuit clerk's office all court files relating to such charges involving plaintiff. Defendant's first assistant filed an affidavit stating that all pertinent files had been returned to the circuit clerk's office and that a listing of those files had been given to the special state's attorney.

On July 30, both the special state's attorney and defendant appeared in court on the special state's attorney's motion to require defendant to report under oath his compliance with the July 21 order; defendant at that time requested a hearing regarding the order which expanded the authority given to the special state's attorney. The trial court denied both

defendant's request for a hearing and the motion of the special state's attorney, the court being of the opinion that the affidavit of defendant's first assistant fully complied with the court's order. At this time defendant disclaimed the affidavit as being without his authority or direction.

The special state's attorney filed a motion asking the court to reconsider its denial of his motion to have defendant state under oath that he had complied with the court order of July 21. In a written order of August 26, the trial court ordered the defendant to report under oath by September 7, as to whether or not he had complied with the July 21 order, and that by September 7, he deliver to the special state's attorney all additional material relating to this matter not previously delivered. At this point, defendant retained private counsel who petitioned for clarification and rehearing on all prior orders of the court regarding disclosures. On September 10, the special state's attorney petitioned for a rule to show cause why defendant should not be held in contempt for willful failure to comply with the order of August 26; the special state's attorney also filed objections to defendant's petition for a rehearing.

On September 15, defendant moved to vacate all disclosure orders previously entered in this case; the court took the matter under advisement and continued the case until September 20 for additional motions and petitions for a rule to show cause. On September 20, the trial court denied defendant's motion to vacate and for rehearing and a hearing on the petition for a rule to show cause was set for September 29.

On September 29, following arguments by counsel, the trial court denied the following motions made by defendant: motion to strike and/or dismiss the petition for rule to show cause; motion for stay of proceedings; motion to seek court's statement of material fact and presentment for leave to appeal under Supreme Court Rules; and a motion to strike the caption. Further, the court granted the special state's attorney's petition for a rule to show cause. Defendant was ordered to appear on October 13 and show cause why he should not be punished for contempt of court for disobeying the orders entered by the court on July 21 and August 26.

On October 13, defendant's attorney filed an affidavit to the effect that defendant was delayed in returning from Florida and requested a continuance. The trial court granted a continuance until October 19 and denied the special state's attorney's request for a body attachment. In the meantime, it appears that on October 8, defendant filed a notice of appeal from the trial court's order denying defendant's motion to vacate the disclosure orders, alleging that the circuit court lacked jurisdiction of the subject matter to enter the order.

On October 19, defendant, in open court, represented that the court's orders had been complied with and that there was nothing further to turn

over; thereupon defendant's counsel moved to dismiss the rule to show cause as there had now been compliance with the court's orders. The special state's attorney stated that on the basis of defendant's representation, he was satisfied that the court's orders had now been complied with. However, the trial court took the position that the rule to show cause proceeding was separate and apart from the actual compliance with those orders. The trial court, while noting that defendant's position was that the court did not have the power to enter the order, cited the numerous delays occasioned by defendant and noted that defendant's compliance was not in writing nor under oath as requested. The trial court then several times inquired whether the only reason defendant had not previously complied with the orders was because he regarded them to be without jurisdiction. Defendant's attorney ultimately responded,

> "MR. MARINACCIO [defense counsel]: I have had a brief conference with him, Your Honor, and he has indicated that it has been his opinion all along that the Court is incorrect in the manner in which it has handled this case. That the orders the Court entered did lack jurisdiction, the Court did not have the authority to do the things it did and that's the reason he resisted in complying with the orders of Court."

The trial court then stated, "All right. Now, we have a hearing, is that right, we have had a hearing?" Defense counsel questioned whether the proceedings constituted a hearing. The trial court offered each side the opportunity to present any evidence; the special state's attorney stated that he had no evidence to offer under the circumstances, and defense counsel responded that defendant was pursuing his legal rights by the filing of the motions and objections. Neither side wished to present anything further, nor did either side request a continuance for the purpose of gathering further evidence to present. The matter was then continued for the submission of memorandums of law by both sides.

On November 24, the trial court issued a written order holding defendant in contempt of court and imposing a fine of $1000. The order gave a well-detailed history of this litigation in chronological order and set out with great care the reasons for defendant being held in contempt. Defense counsel then requested that a special state's attorney be appointed to represent defendant on appeal. The trial court was of the opinion that the appointment of such a special state's attorney to represent defendant on appeal would place the county in the unusual position of both paying to sustain the trial court's decision and then paying someone else to overturn the judge's decision, and so denied the motion for the appointment of a special state's attorney on appeal.

Defendant now appeals from both the finding of contempt and the denial of his motion for the appointment of counsel on appeal.

Defendant's first contention on appeal is that he was found guilty of indirect criminal contempt and as such was denied his constitutional rights to notice of the charges, hearing before an impartial court, trial by jury and the right to be proved guilty beyond a reasonable doubt.

■■ ■ We agree with defendant that he was found guilty of indirect criminal contempt. In cases of indirect criminal contempt, a defendant is entitled to a formal hearing on the contempt charges and to all appropriate constitutional rights. (*People v. Winchell* (1977), 45 Ill. App. 3d 752, 359 N.E.2d 487.) Nevertheless, we do not believe that defendant was denied his right to a hearing before an impartial court, notice of the charges and proof beyond a reasonable doubt. The record reveals that the petition for a rule to show cause why defendant should not be held in contempt was filed on September 15 and set for hearing on September 29. While defendant did not appear on September 29, he was represented by counsel who appeared and argued several motions. The court entered the rule to show cause and set it for hearing on October 13 at the request of the defense counsel; a continuance of the rule was allowed to October 19, again at the request of defense counsel; on October 20 the rule was finally heard. While it is true that originally the rule to show cause was brought by the special state's attorney and it was the trial court who directed the contempt proceeding against defendant, the activities which formed the basis of the contempt in both the rule sought by the special state's attorney and the finding of contempt by the trial court were the same in both instances.

■■ Defendant's contention that the trial court should have recused itself is without merit. First, defendant at no time subsequent to the filing of the petition for a rule to show cause requested a change of judges, despite the fact that the previous April the trial court in denying defendant's motion for a change of venue specifically reserved to defendant that right if the litigation continued. Secondly, despite defendant's allegation, the record does not suggest or reveal bias or prejudice against defendant on the part of the trial court. Nor does it appear that the trial court here had become so personally embroiled in the contemptuous events that it should have recused itself. See *People v. Jashunsky* (1972), 51 Ill. 2d 220, 282 N.E.2d 1.

■■ We are also of the opinion that based on the record defendant did receive a hearing and the opportunity to present witnesses and evidence, nor was he denied the right to be proved guilty beyond a reasonable doubt. Defense counsel, as well as the special state's attorney, declined to present any evidence when asked to do so by the trial court; nor did the

defense counsel request a continuance for such purpose. In criminal contempt prosecution, the fundamental fairness standard of due process, rather than the due process components of the Fifth and Sixth Amendments, is to be applied. (*People v. Winchell.*) In view of the above circumstances, we cannot agree that the hearing was so fundamentally unfair as to deny defendant due process of law.

■■ It is clear, however, that defendant's fine must be reduced from $1000 to $500. In a contempt proceeding, where the sentence actually imposed exceeds six months imprisonment or a fine in excess of $500, the record must reflect that the defendant was afforded a jury trial or knowingly and understandingly waived his right in open court. (*County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.) The record here does not reflect that such a waiver was obtained or was given by defendant. Accordingly, we therefore reduce defendant's fine from $1000 to $500. See *People v. Roberts* (1976), 42 Ill. App. 3d 604, 356 N.E.2d 429; *City of Chicago v. King* (1967), 86 Ill. App. 2d 340, 230 N.E.2d 41.

We turn next to defendant's contention that the trial court was without authority to enter mandatory orders compelling defendant to turn over information to the special state's attorney; further, defendant argues that the alleged delays in this litigation, occasioned by the good faith filing of motions by him, do not constitute a basis for a finding of indirect criminal contempt. According to defendant, he had maintained throughout the proceedings that the trial court was without jurisdiction to enter the turnover orders, and that the motions and objections filed on his behalf were good faith efforts to challenge that jurisdiction.

■■ In testing the validity of a finding of contempt a court may review and should review the validity of the underlying production orders. (*Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 179 N.E.2d 602.) Contempt will not lie for disobeying an order which is void for want of jurisdiction of the parties or subject matter or because the court has no power to decide the particular matter. (*City of Chicago v. King.*) Illinois decisions have been in accord with the Federal cases in holding that if the issuing court has the necessary jurisdiction, its order, no matter how erroneous, must be obeyed under pain of contempt, until set aside. *City of Chicago v. King* (1967), 86 Ill. App. 2d 340, 354, 230 N.E.2d 41, 48.

■■ Defendant further argues that the trial court prematurely and without any authority, invaded the province of the executive branch, to wit, the office of the special state's attorney, before the special state's attorney had tried to obtain the material by means available to him, namely, the impanelling of a special grand jury. However, defendant does not question the authority of the trial court to order the appointment of the special state's attorney to investigate these matters; the special

state's attorney stands in the position of the state's attorney and is entitled to the material related to the matters he is investigating. Given the power to make such appointment, it is unreasonable to hold that the trial court does not then have the power to assure that the materials of the office are available to the special state's attorney. Defendant's argument actually boils down to a choice between two methods of compelling the turnover of the material; by court order or by impanelling a special grand jury before which defendant could be summoned and could testify as to the material in his possession relating to the matters under investigation. Defendant has suggested no compelling reason for taking the grand jury approach over the trial court's issuing a turnover order. Therefore defendant's contention that the trial court was without jurisdiction to issue the turnover orders is without merit.

Defendant also argues that he should not be held in contempt for the delays caused by his filing of motions and objections to the proceedings. Careful review of the record reveals that having resisted compliance with the court orders of July 21 and August 26 with the filing of motions and objections, even seeking an interlocutory appeal, defendant, threatened by a petition for a rule to show cause, finally "complied" on October 20 by merely representing orally to the trial court and the special state's attorney that there was nothing further to turn over to the special state's attorney. It is clear from the record that such "compliance" could have been made at the time either of the court orders was entered. Had defendant seriously wished to challenge the jurisdiction of the trial court to enter the turnover orders, he could have refused to comply at the time the orders were entered, be held in contempt, and have taken the matter up on appeal then and there. While recognizing the rights of litigants to file motions and objections, we cannot say that the activities of defendant here were done in "good faith" but were instead delaying tactics which ultimately resulted in compliance with the trial court's orders long after they should have been complied with.

■■ Viewing the entire proceedings in the light of the above facts and the carefully detailed contempt order in this case, we hold that the actions of defendant in this case clearly support the trial court's finding that he was in contempt of court.

Defendant has also appealed from the denial of his motion for the appointment of a special state's attorney to represent him on appeal. In denying defendant's motion, the trial court was concerned that such an appointment would create the unusual situation in which the county would be paying both for the sustaining of the trial court's decision and for the attack on that decision. On appeal, it is argued by the special state's attorney that as the motion was presented on December 2 when

defendant had become a private citizen, his term of office having expired on November 30, he no longer had standing to pursue a motion in his former capacity as state's attorney.

■■ The appointment of a special state's attorney involves the exercise of judicial discretion in the determination of whether a contingency authorizing the exercise of such power has arisen. (*People ex rel. Baughman v. Eaton* (1974), 24 Ill. App. 3d 833, 834, 321 N.E.2d 531, 532.) We do not agree with the reasoning of the trial court that such an appointment be denied for the sole reason that the county has to pay the cost for both sides of the appeal. Nor do we agree with the latter argument advanced by the special state's attorney; clearly, where the events which form the basis of the action against the state's attorney occurred during his tenure of office, the fact that the request for counsel is made after he has left office does not control whether or not he is entitled to the appointment of special counsel to represent him.

■■ However, despite the lack of merit in the above arguments, the record here clearly supports the trial judge's denial of defendant's motion. Defendant argues that his actions in this litigation were done to protect the office of state's attorney. However, the record reflects that during this litigation defendant was not performing necessary functions of his office but was essentially on a "private frolic" of his own. The delays in this case were most often occasioned by defendant's private demands on his time, namely, vacations, job interviews and preparing for an out-of-State bar examination. Therefore, we hold that no abuse of discretion was committed by the trial court in denying defendant's motion for the appointment of a special state's attorney to represent him on this appeal.

Therefore, we affirm the finding of contempt and the denial of defendant's motion for an appointment of a special state's attorney on appeal. We remand the cause to the circuit court of Kane County with directions that an amended mittimus issue reducing the fine imposed against defendant to the sum of $500.

Affirmed and remanded with directions.

SEIDENFELD, P. J., and GUILD, J., concur.