AURORA STEEL PRODUCTS, Plaintiff-Appellee, *v.* UNITED STEEL-WORKERS OF AMERICA, A.F.L.-C.I.O., C.L.C., Defendant-Appellant.

Second District    No. 80-331

Opinion filed March 20, 1981.

William H. Schmelling, of Chicago, and Bernard Kleiman, of United Steelworkers of America, Pittsburgh, Pennsylvania, for appellant.

William C. Murphy, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Defendant, United Steelworkers of America, A.F.L.-C.I.O., C.L.C. (the Union), appeals from an order of the circuit court of Kane County which adjudged it in contempt of court for violating a preliminary injunction issued by that court at the request of plaintiff, Aurora Steel Products (the Company) and which fined the Union $6,000. The following issues are raised by the Union on appeal: (1) whether the trial court erred in imposing a criminal penalty after a civil contempt trial; (2) whether the evidence establishes beyond a reasonable doubt that the Union intentionally and wilfully violated the November 16, 1978, preliminary injunction; (3) whether the trial court was without jurisdiction in the contempt proceedings since no bond had originally been posted; and (4) whether the $6,000 fine was unreasonable, arbitrary or excessive.

The factual and procedural history of this dispute is as follows. On November 8, 1978, the Company filed a complaint for injunction alleging that since October 30, 1978, defendants had engaged in illegal strike activities consisting of interference with ingress and egress to the Company's premises; interference with the performance of duties by non-striking employees by intimidation, threats of force and violence, and property damage inflicted upon vehicles and personal residences; and damage to the Company's business and property. The complaint prayed for a temporary restraining order and a preliminary injunction enjoining

such acts. Named as defendants were the Union and a number of persons described as members of the organizing committee thereof, both individually and as representatives of the Union. A temporary restraining order was issued that same day.

On November 16, 1978, the date scheduled for hearing on the petition for preliminary injunction, the parties entered into an agreed order which provided as follows:

"I. The defendants are hereby preliminarily enjoined from:

A. Interfering with ingress and egress to the plant of Aurora Steel Products;

B. Threatening, assaulting or committing any battery against any employee of Aurora Steel Products;

C. Having or permitting more than three pickets at or near the two Aurora Steel Products plant entrances on each of the following streets Lake, Second and Third.

II. The plaintiffs are hereby preliminarily enjoined from interfering with any lawful strike activities of defendants; and

III. The parties are hereby preliminarily enjoined from directing any insult or obscenity against any party or any person acting with, for or on behalf of any party."

On February 27, 1979, the Company filed a petition for rule to show cause requesting the court to issue a rule against the Union and other defendants to show cause why they should not be held in contempt of court for violation of the November 16, 1978, court order. On March 13, 1979, a rule was issued against the Union and defendant Don Thomas and was set for hearing on March 26, 1979.

On that date, the Company introduced the following evidence of alleged violations:

1. On February 5, 1979, six to seven pickets were observed at the Company's gate.

2. On February 13, 1979, Union pickets delayed a Company delivery vehicle approximately ten minutes by talking to the truck driver.

3. On February 15, 1979, the Company's fence was damaged when struck by a truck driven by a striking Union member and a pile of scrap materials was dumped on the Company driveway.

4. On February 15, 1979, an automobile driven by a Union employee was "stalled" for 15 to 20 minutes with its hood up near the main entrance to the Company facility.

5. On February 15, 1979, two cars driven by non-striking employees were prevented from entering the main gate by pickets walking back and forth in front of the driveway.

6. James L. Curtis, a security guard employed by the Company,

was threatened with physical harm and great bodily injury on several occasions.

At the close of the evidence, the court entered an order in favor of defendant Don Thomas but against the Union. Specifically, the court ruled that the Union had violated the November 16, 1978, court order intentionally and wilfully on February 5, 1979, February 15, 1979, February 23, 1979, and on other unspecified dates. Following a hearing on the issue of sanctions held on April 10, 1979, the court fined the Union $6,000, payable to the clerk of the Circuit Court of Kane County. This appeal followed.

The initial issue which must be resolved is whether the proceedings in the trial court were in the nature of civil or criminal contempt. Civil contempt has been distinguished from criminal contempt repeatedly and in varying ways. For example, it has been said that civil contempt proceedings are instituted for the purpose of coercing obedience to a court order, while criminal contempt proceedings are instituted to vindicate the authority of the court (*Blankenship v. Blankenship* (1978), 63 Ill. App. 3d 803, 380 N.E.2d 1165); that civil contempt consists of the failure to do something which the court has ordered one to do for the benefit of another party, while criminal contempt consists of acts in disrespect of the court or its process (*People v. Redlich* (1949), 402 Ill. 270, 83 N.E.2d 736); that civil contempt consists of a refusal to do what has been ordered, while criminal contempt consists of doing what has been prohibited (*People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737); and that where the sanction involved is punitive, such as imprisonment for a definite term or a fine in an amount certain, the contempt is criminal, while a coercive or remedial measure, such as commitment of a contumacious party until he complies with the court's order, or a fine until there is obedience to the order, signals civil contempt. *Board of Junior College District No. 508 v. Cook County College Teachers Union Local 1600* (1970), 126 Ill. App. 2d 418, 262 N.E.2d 125, *cert. denied* (1971), 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168.

Despite the generalities in the cited cases, it is often difficult to distinguish between the two forms of contempt. As our supreme court has noted:

"The lines of demarcation * * * between criminal and civil contempt can be, and are, in many instances, very indistinct and even imperceptible, for the simple reason that many acts involve the elements of both, and, as a consequence, confusion has resulted in the court's attempts to classify them." (*People v. Gholson* (1952), 412 Ill. 294, 298-99, 106 N.E.2d 333, 336.)

This, apparently, is one of those cases. The parties herein characterize the contempt involved as civil, while the trial court refused to label it at all:

"I will not try to describe the conduct of the respondent as either civil or criminal. It's contempt. It's disobeyance [*sic*] of a known Court order by the Union."

■■ Despite the parties' apparent agreement on the nature of the contempt as civil, we have reached the contrary conclusion that it is, in fact, criminal. The sanction imposed, a fine for a definite sum of money, is clearly punitive, rather than coercive, in nature; the contempt arose out of the commission of acts prohibited by a valid court order; and the purpose of imposing a fine on the Union was to vindicate the authority of the court. While the Company may have benefited incidentally from the contempt proceedings, this is not sufficient to alter the character of the contempt.

While we recognize that there is some dated authority to the contrary (see, *e.g.*, *Hake v. People* (1907), 230 Ill. 174, 82 N.E. 561; and *Rothschild & Co. v. Steger & Sons Piano Manufacturing Co.* (1912), 256 Ill. 196, 99 N.E. 920), we believe that the more recent decisions are in accord in viewing this type of contempt as criminal rather than civil. For example, in *Board of Junior College District No. 508 v. Cook County Teachers Union Local 1600* (1970), 126 Ill. App. 2d 418, 262 N.E.2d 125, *cert. denied* (1971), 402 U.S. 998, 29 L. Ed. 2d 165, 91 S. Ct. 2168, the court determined that violation of a temporary injunction restraining the Union from causing, inducing or encouraging a strike or from interfering with the performance of service by plaintiff's employees or from setting up a picket line constituted criminal contempt. In reaching that decision, the court noted that the punishment imposed was in sums certain and definite periods of imprisonment and lacked any element of coerciveness. While, admittedly, the trial judge in that case directed the plaintiff's attorney to prepare and file a petition for rule to show cause against the defendant Union, we do not think that fact alone detracts from the court's conclusion regarding the criminal nature of the contempt or makes it any less applicable to our decision herein.

Subsequently, in *People ex rel. Illinois State Dental Society v. Taylor* (1971), 131 Ill. App. 2d 492, 268 N.E.2d 463, the court was faced with the question of what type of contempt was involved where there was a violation by the defendant of a permanent injunction barring him from the practice of dentistry. Refusing to follow *Hake v. People* (1907), 230 Ill. 174, 82 N.E. 561, the court looked to the sentence imposed and, finding it to be punitive rather than coercive, concluded that the proceedings constituted an action for criminal contempt. See also *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 356 N.E.2d 551, and *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720.

■■ We find that the reasoning of those decisions is persuasive and reinforces our conclusion that the contempt involved herein is criminal. Since

the contemptuous acts were committed outside the presence of the court, the contempt can be further characterized as indirect. (*People v. Gholson* (1952), 412 Ill. 294, 106 N.E.2d 333.) As with any indirect criminal contempt, the defendant is entitled to a formal hearing on the contempt charges and to all appropriate constitutional rights. (*Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 385 N.E.2d 829.) Furthermore, where the penalty actually imposed exceeds six months incarceration or a fine in excess of $500, the record must reflect that the defendant was afforded a jury trial or knowingly and understandingly waived that right in open court. *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720; *Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 385 N.E.2d 829; see also *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477.

In the present case, the record does not reflect that the Union knowingly and understandingly waived its right to a jury trial and, therefore, the court could not impose a fine in excess of $500. The right to a trial by jury in these circumstances was held to be equally applicable to corporations as well as individuals in *County of McLean v. Kickapoo Creek, Inc.*, and we can see no distinction in application of that rule for an unincorporated labor organization as is the case here.

Next, we must address the Union's arguments that the record does not establish beyond a reasonable doubt that the Union intentionally and wilfully violated the trial court's injunction and that the trial court was without jurisdiction to enter a finding of contempt because the injunction was void for lack of a bond.

While it is not clear from a review of the record what standard of proof the court utilized in reaching its finding of contempt, we are convinced that the evidence adduced was more than sufficient to prove beyond a reasonable doubt that the Union violated the injunction on February 5, 1979, and on February 15, 1979, as well as on other unspecified dates. There was testimony as well as photographic exhibits clearly indicating that there were more than three pickets on the picket line on February 5, 1979, and that on February 15, 1979, the Union pickets impeded the entrance of two vehicles driven by nonstriking employees and verbally insulted the drivers.

■■ Furthermore, the evidence showed that on certain unspecified dates, the Union pickets verbally insulted Mr. James Curtis, a security guard hired by, and working on behalf of, the Company, and thus a party protected by section III of the November 16, 1978, order. We can find no error in the trial court's findings with regard to the above acts. The question of whether a defendant has been guilty of contempt is a question of fact to be decided by the trial court, and its decision will not be disturbed on review unless it is against the manifest weight of the

evidence or the record discloses an abuse of discretion. (*Daum v. Daum* (1973), 11 Ill. App. 3d 245, 296 N.E.2d 614.) However, as to the trial court's finding that the Union violated the injunction on February 23, 1979, we conclude that such finding was against the manifest weight of the evidence. There simply was no evidence in the record relating to any alleged violations on that date.

■■ Finally, we cannot accept the Union's contention that the trial court was without jurisdiction to enter the contempt order because the November 16, 1978, injunction was void for lack of a bond. First of all, the question of whether to require a bond prior to issuance of a temporary restraining order or preliminary injunction is one which rests in the sound discretion of the trial court (Ill. Rev. Stat. 1979, ch. 69, par. 9), and we have been shown no abuse of that discretion. Secondly, and more importantly, the Union, which is now complaining of the lack of bond, failed to object to the issuance of the injunction without a bond at the time it was issued and, in fact, entered into an agreed order for issuance of the injunction. Under these facts, we conclude that the Union has waived the right to complain of the lack of bond at this time. See *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 335 N.E.2d 156.

From our examination of the record it appears that there were no other violations of the preliminary injunction for which the Company sought court relief and that the picketing ended on July 17, 1979, upon the parties entering into a mutually acceptable collective bargaining agreement. In view of this and our review of the proven instances of contemptuous conduct, rather than remanding this for new proceedings, we reduce the fine to $500. See *Armentrout v. Dondanville* (1979), 67 Ill. App. 3d 1021, 385 N.E.2d 829; Ill. Rev. Stat. 1979, ch. 110A, pars. 366(a)(5), 615(b)(4).

Accordingly, with respect to the trial court's finding of contempt, we affirm in part and reverse in part, and remand this cause to the circuit court of Kane County with directions that the fine imposed against defendant be reduced to the sum of $500.

*Judgment affirmed in part and reversed in part and remanded with directions.*

LINDBERG and UNVERZAGT, JJ., concur.