# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *SKS & Associates, Inc. v. Dart*, 2012 IL App (1st) 103504

---

| | |
|---|---|
| Appellate Court Caption | SKS AND ASSOCIATES, INC., Plaintiff-Appellee, v. THOMAS DART, as Sheriff of Cook County, Illinois, Contemnor-Appellant (Sheila Herron and Any Unknown Occupants, Defendants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3504 |
| Filed | August 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order finding contemnor sheriff in indirect criminal contempt, fining him $1,400 and awarding plaintiff attorney fees based on the sheriff's failure to obey an order to enforce an order of possession was reversed on the ground that the sheriff was not afforded many of the constitutional and procedural rights provided to other criminal defendants, including notice that he could be held in indirect criminal contempt, the right to a jury trial, the right to remain silent, the right to present evidence, and the right to confront and cross-examine witnesses. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-M4-885; the Hon. Cheyrl D. Ingram, Judge, presiding. |
| Judgment | Reversed. |

| | |
|---|---|
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Donna M. Lach, and Sanja Musikic, Assistant State's Attorneys, of counsel), for appellant. |
| | Anthony J. Peraica, of Anthony J. Peraica & Associates, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion. |

## OPINION

¶ 1 Appellant Thomas Dart, as Sheriff of Cook County, Illinois (the Sheriff), appeals from an order of the circuit court of Cook County finding the Sheriff in contempt of court, fining him $1,400 and ordering him to pay attorney fees in the amount of $3,093.75 to plaintiff, SKS & Associates, Inc. (SKS). For the reasons that follow, we reverse and remand to the circuit court.

¶ 2                                          BACKGROUND

¶ 3 The record reveals the following background facts and circumstances. On May 21, 2009, SKS filed a forcible entry and detainer action seeking possession of a certain residential property based on an alleged breach of a month-to-month tenancy by defendants, Sheila Herron and any unknown occupants. The circuit court entered an order for possession on July 20, 2009, but stayed that order until August 10, 2009, and ordered recovery of rent from defendants. The order for possession was signed by Judge Cheyrl Ingram but stamped "Judge Robert Senechalle." SKS presented the order for possession to the Sheriff on August 26, 2009. On October 28, 2009, SKS filed a motion to refresh and extend the order for possession. The motion alleged that the Sheriff had not yet enforced the order for possession and that the order therefore needed to be refreshed and extended so that it could be enforced within the time required by statute.

¶ 4 On November 2, 2009, SKS filed a motion initially entitled "Motion To Hold Sheriff In Contempt Of Court For Failing To Evict." On November 9, the circuit court continued SKS's "motion for rule to show [cause] on Sheriff" to December 7, 2009, for personal service of process. As a result, a "Rule to Show Cause" was issued by the clerk's office directing the Sheriff to appear before the court and to show cause why he should not be held in civil contempt of court. Also on November 9, the court entered an order extending the order for possession for an additional 90 days. The parties appeared in court on November 23, 2009, but the record does not contain a transcript of those proceedings. However, on November 23, the court entered a "corrected order" extending the enforceability date for the eviction to

February 9, 2010. On that same date, the court entered an order continuing SKS's "Motion To Hold Sheriff In Contempt Of Court" to February 8, 2010, and ordering the Sheriff to serve the November 23, 2009, extended order for possession.

¶ 5　　The parties appeared in court on February 8, 2010, but there is no transcript of those proceedings in the record on appeal. Nevertheless, the parties agree that at that hearing, the Sheriff informed the court that the eviction was scheduled for February 10, but that a predicted snowstorm on that date could cause the eviction to be rescheduled. The parties also agree that during that hearing, the court orally ordered the Sheriff to effectuate the eviction by February 10, 2010. Also on February 8, the circuit court entered an order extending the enforcibility of the order for possession to February 26, 2010. On that same date, the court set for a hearing on March 15, 2010, SKS's "motion to/for Rule To Show On Sheriff." The Sheriff enforced the order for eviction on February 16, 2010.

¶ 6　　The parties appeared in court on March 15, 2012, for the hearing on SKS's motion. SKS argued that the Sheriff had "blatantly disregard[ed]" the statute and the court's orders and had put SKS on the "verge of bankruptcy." SKS asked the court to hold the Sheriff in contempt for failing to abide by the court's orders and enforce the order for possession or, alternatively, to fine the Sheriff for the rent lost by SKS in order to send a "clear message" to the Sheriff.

¶ 7　　Counsel for the Sheriff argued that SKS's motion to hold the Sheriff in contempt was moot because the order for possession had been enforced on February 16, 2010. Counsel argued that during the hearing on February 8, 2010, she advised the court that it was predicted to snow on February 10. Counsel stated that all evictions were in fact cancelled on February 10 because of the snow and that the temperature on February 11 was below what the "general order of the circuit court of Cook County" recognizes as being acceptable for evictions. Counsel further stated that because the Sheriff does not conduct evictions on weekends (February 13 and 14), and because February 12 and February 15 were court holidays (Lincoln's birthday and President's Day), the Sheriff enforced the eviction on February 16.

¶ 8　　In response to the court's question as to why the eviction did not take place between August 2009 and February 2010, counsel for the Sheriff stated that when the parties were in court on November 23, 2009, she informed the court that there was a tremendous backlog in the Sheriff's office due to the amount of foreclosures and evictions taking place. The court stated that "everybody[ ] is calling it [a backlog] these days," and asked counsel for the Sheriff what "really" happened between that time frame. Counsel responded that due to the backlog of foreclosures and evictions, the Sheriff was running approximately 12 to 13 weeks behind schedule.

¶ 9　　The court asked counsel for the Sheriff when the eviction in this case was originally scheduled, and counsel stated she did not know but would ask the Sheriff's office. Lieutenant Pon of the Sheriff's office, who was present in court, was then called to the stand. The court stated that it was not taking testimony from him but, instead, only wanted "an answer to [its] question." The lieutenant stated that the expired order would have noted when it was scheduled to be enforced, which "would have been sometime around November." The

lieutenant also stated that when the order for possession was entered around August, the eviction was "not scheduled" at that time. The court then asked counsel for the Sheriff when, after the November 23 court date, the eviction was scheduled. Counsel stated that she did not know. Lieutenant Pon informed the court that it was scheduled for the first week of February. Counsel for the Sheriff further pointed out that "General Order 2009-02" noted the extreme weather conditions of that winter. The general order also stated that the "Sheriff of Cook County shall cease the execution of eviction orders related to residential real estate effective December 14, 2009" and that "[t]he Sheriff shall resume execution of said orders effective January 4, 2010." The court then stated that it was looking at the Sheriff's schedule of evictions, which appeared to reflect that fewer evictions were performed in the western suburbs than in other areas.

¶ 10    The court stated that when the parties appeared in court in November of 2009, the case was continued because of the representation that, based upon a backlog of evictions and foreclosures as well as a three-week moratorium on evictions during the winter, the eviction would be completed by February 8, 2010, and therefore the Sheriff was given the opportunity to effectuate the order by that date. The court continued that when the parties appeared in court on February 8, there was an indication of a wrong stamp on the possession order entered in November, but that had never previously been an issue raised by the Sheriff. Although the order was corrected on that date, "at that point the Sheriff had already scheduled the eviction for February 10." The court further stated the order was corrected and that it ordered the Sheriff to enforce the eviction on February 10. Moreover, because the eviction was scheduled for February 10, the Sheriff should "never have changed" the date of the eviction even if there was a problem with the wrong stamp being on the order. The court continued:

> "And based on them not evicting on the February 10 order, I do find that the Sheriff is in contempt.
>
> Now, I can't give you your rent from August until now because everybody is in the same position that your clients are in in terms of waiting for the Sheriff to get to that number.
>
> However, based on the fact that, one, they failed to evict on February 10, and didn't evict until February 16, that is an issue for me.
>
> And based on the fact that you choose to not even evict in the western suburbs on a consistent basis but evict everywhere else within the quadrants of the City and suburbs of Cook County, there's a problem.
>
> So I'm going to enter an order to fine the Sheriff $1,400."

The trial court entered a written order, "for the reasons expressed in the record," holding the Sheriff in "civil" contempt and fining the Sheriff $1,400 payable to SKS. The Sheriff filed a motion for reconsideration, which the court granted in part and denied in part. The motion was granted insofar as the fine of $1,400 was made payable to the clerk of the circuit court of Cook County, rather than to SKS. The motion was denied in all other respects. On August 18, 2010, SKS filed a petition for attorney fees. The circuit court granted the motion and ordered the Sheriff to pay SKS $3,093.75. This appeal follows.

¶ 11    The Sheriff raises several grounds upon which he claims the circuit court's order finding him in contempt must be vacated. He argues that the court found him in criminal contempt and that he was not afforded the due process to which a party charged with criminal contempt is entitled. Alternatively, the Sheriff argues that if the court found him in civil contempt, the court's written order is deficient on its face. In either case, the Sheriff claims that the circuit court abused its discretion in finding him in contempt of court. SKS responds that the trial court found the Sheriff in criminal contempt and that the Sheriff was afforded all of the due process rights to which he was entitled.

¶ 12                                            ANALYSIS

¶ 13    The procedures that must be followed in contempt cases vary according to the type of contempt involved. Therefore, we must first properly classify the type of contempt at issue in this case.

¶ 14    SKS's "Motion To Hold Sheriff In Contempt Of Court For Failing To Evict" asked the circuit court to find the Sheriff in "civil" contempt. The trial court's written order also states that the Sheriff was held in "civil" contempt. However, this court is not bound by the trial court's designation but, instead, we must examine the nature of the sanctions imposed. See *Helm v. Thomas*, 362 Ill. App. 3d 331 (2005); *Aurora Steel Products v. United Steelworkers of America*, 94 Ill. App. 3d 97, 101 (1981).

¶ 15    The classification of contempt as either civil or criminal is essentially a function of the purpose for which the contempt sanctions are imposed and where the allegedly contemptuous conduct occurred. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). The primary determinant is the purpose for which contempt sanctions are imposed. If contempt sanctions are imposed for a coercive purpose, to compel the contemnor to perform a particular act, the contempt is civil in nature. "On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." *Betts*, 200 Ill. App. 3d at 43-44. In other words, the test is whether, considering the totality of the circumstances, the contempt proceeding is coercive or punitive in nature. *In re Marriage of Miller*, 88 Ill. App. 3d 370, 373 (1980).

¶ 16    Because the function of civil contempt is coercive, the contemnor in a civil contempt proceeding must have the opportunity to purge him or herself from contempt by complying with the relevant court order. *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007). In contrast to the coercive nature of civil contempt, criminal contempt is imposed to punish past conduct that offends the dignity of the court. *People v. Goleash*, 311 Ill. App. 3d 949, 956 (2000). The conduct that may be punished by criminal contempt includes the entire range of disrespectful, disruptive and disobedient acts, including disobedience of a court order. *Betts*, 200 Ill. App. 3d at 45.

¶ 17    In this case, in spite of the language of the circuit court's order, it is clear that the Sheriff was found in criminal contempt. Most importantly, it is undisputed that when the parties appeared in court for the hearing on SKS's motion, the Sheriff had already enforced the order for possession. Thus, there was no action that the contempt finding could have coerced the Sheriff to take. The criminal nature of the contempt finding is further evidenced by the fact that the court's written order did not contain a statement of what the Sheriff was required to

do to purge himself of the contempt. See *Felzak*, 226 Ill. 2d at 391 ("a valid purge condition is a necessary part of an indirect civil contempt order"). The circuit court's statements at the contempt hearing also reflect that the finding of contempt was intended to punish the Sheriff for his prior failure to obey the court's order to enforce the order for possession. For these reasons, we conclude that the Sheriff was found in criminal contempt.

¶ 18    Having so concluded, we must now determine the type of criminal contempt in which the Sheriff was found. Contemptuous conduct is categorized as direct or indirect. *Betts*, 200 Ill. App. 3d at 47. Criminal contempt is direct when it occurs in the presence of the judge. *People v. Smith*, 377 Ill. App. 3d 458, 462 (2007). It is limited to actions seen and known by the court, and opinions, presumptions, conclusions and inferences cannot be considered. *Betts*, 200 Ill. App. 3d at 47; *People v. Simac*, 161 Ill. 2d 297 (1994). The most common example of criminal contempt is an outburst during court proceedings. *Betts*, 200 Ill. App. 3d at 47. Indirect criminal contempt, on other hand, refers to all other contemptuous acts that occur outside the trial court's presence. *Goleash*, 311 Ill. App. 3d at 956.

¶ 19    In this case, there is no dispute that the Sheriff was held in indirect criminal contempt. The conduct being punished was not an outburst during court or a similar disruption of judicial proceedings. Instead, it was based on conduct occurring outside of the court's presence: the Sheriff's alleged failure to obey the court's order to enforce the order for possession. We conclude that the Sheriff was held in indirect criminal contempt.

¶ 20    A person charged with indirect criminal contempt is entitled to all of the constitutional protections and procedural rights afforded to other criminal defendants. *Betts*, 200 Ill. App. 3d at 58. These include the right to be charged by a written complaint, petition or information; the right to know the nature of those charges; the right to personal service; the right to file an answer; the right to be heard; the right to present evidence; the right to confront and cross-examine witnesses; the right to be personally present at trial; the right to subpoena witnesses; the right to a public hearing; the right to the privilege against self-incrimination; the right to counsel; the right to the presumption of innocence; and the right to be proven guilty beyond a reasonable doubt. *People v. Budzynski*, 333 Ill. App. 3d 433, 439 (2002); *Betts*, 200 Ill. App. 3d at 58; *Goleash*, 311 Ill. App. 3d at 956-57.

¶ 21    Additionally, "[a] defendant in an indirect criminal contempt proceeding is entitled to a jury trial *** if the potential penalty may exceed six months' incarceration or a fine greater than $500." *City of Rockford v. Suski*, 307 Ill. App. 3d 233, 247 (1999). A defendant in an indirect criminal proceeding may also move for a substitution of judge under section 114-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-5 (West 2010)). *Hoga v. Clark*, 113 Ill. App. 3d 1050, 1059 (1983). If the motion is made within 10 days after the cause has been placed on the judge's call, the named judge cannot proceed further and must transfer the case. 725 ILCS 5/114-5(a) (West 2010). The motion for substitution of judge may be made at any other time, but in those instances the movant has the burden of showing prejudice on the part of the judge. *In re Marriage of Madary*, 166 Ill. App. 3d 103, 106 (1988); 725 ILCS 5/114-5 (West 2010).

¶ 22    In this case, the Sheriff was not afforded many of the constitutional and procedural rights set forth above. First and foremost, the Sheriff was not given notice that he could be held in

indirect criminal contempt. The motion filed by SKS explicitly asked the court to find the Sheriff in "civil" contempt.[1] SKS's motion also alleged that defendants were still in possession of the premises because the Sheriff had failed to enforce the order for possession and asked the court to order the Sheriff to "enforce the eviction order." This language indicated that SKS's motion was intended to coerce the Sheriff to enforce the eviction order and so implied that SKS was seeking to hold the Sheriff in civil contempt. SKS's motion was alternatively referred to as a motion for a rule to show cause as to why the Sheriff should not be held in contempt, further implying that the contempt proceedings were civil in nature. See *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 823 (1992) (holding that pleading captioned " 'petition for rule to show cause' " implies that the proceeding will be civil because a criminal defendant can never be compelled to " 'show cause' "); *Betts*, 200 Ill. App. 3d at 58-59 (same). The Sheriff was not informed that he could be found in criminal contempt until the court actually found him in contempt and imposed a fine, despite the fact that the eviction order had already been enforced. As a result, it cannot be said that the Sheriff was ever served with a proper complaint, petition or information nor was the Sheriff ever notified of the nature of the charges against him. This is insufficient to satisfy the requirements of due process.

¶ 23    The appellate court discussed the purpose of the right to be given proper notice in *Goleash*, 311 Ill. App. 3d at 957. The court stated:

"The alleged contemnor cannot assert these [constitutional and procedural] rights unless he receives proper notice of the nature of the charges against him. Accordingly, any party wishing to initiate indirect criminal contempt proceedings must not only notify the alleged contemnor that sanctions are being sought, but that the proceedings will be criminal in nature. [Citation.] Thus, indirect criminal contempt proceedings cannot be initiated by a pleading captioned so as to imply that the proceedings will not be criminal. Instead, a party seeking a finding of indirect criminal contempt must say so explicitly by filing a pleading captioned 'petition for adjudication of criminal contempt.' [Citation.]" *Goleash*, 311 Ill. App. 3d at 957.

¶ 24    In addition to the lack of notice, the Sheriff here was not afforded many of the other constitutional and procedural rights described above. For example, because the Sheriff was fined $1,400, the potential penalty exceeded a fine of $500 and as a result, the Sheriff was entitled to a trial by jury or to affirmatively waive that right. See *City of Rockford*, 307 Ill. App. 3d at 247. SKS argues that the Sheriff could have attempted to assert these rights but did not do so. However, the fact that the Sheriff did not assert his rights, such as the right to move for a substitution of judge, is immaterial given that he was never informed that he was facing criminal charges. As the court noted in *Goleash*, an alleged contemnor cannot assert the constitutional and procedural rights to which he is entitled unless he receives notice of

---

[1]At oral argument, counsel for SKS told this court that SKS's motion "never specifically said civil." However, the prayer for relief in SKS's motion states: "WHEREFORE, your Plaintiff respectfully requests this Honorable Court to Hold the Sheriff in *civil Contempt* of Court for Failing to Evict, enforce the Eviction Order, and for any such other relief that this Court deems fit and proper." (Emphasis added.)

the nature of the charges against him. See *Goleash*, 311 Ill. App. 3d at 957. The Sheriff was clearly under the impression that the contempt proceedings were civil in nature, and so his primary argument at the hearing on the rule to show cause was that the motion to find him in contempt was moot because the order for possession had already been enforced. Further, when it was evident at the hearing that the circuit court was going to question Lieutenant Pon, the Sheriff's counsel asked the court if it was taking testimony from that witness. The court responded that it was not and that it only wanted "an answer to [its] question." Given the lack of notice prior to and at the final hearing, it cannot be said that the Sheriff had an "opportunity" to exercise his constitutional and procedural rights, including the right to remain silent under the fifth amendment of the United States Constitution as well as the right to present evidence and to confront and cross-examine the witnesses against him. We also note that without taking evidence on the question, the court stated that one of the bases for the contempt finding was its conclusion that evictions were not being evenly enforced. The Sheriff was not informed of such a complaint or given the opportunity to present evidence to the contrary.

¶ 25    In addition to the deficiencies set forth above, the nature of the proceedings in the circuit court also improperly shifted the burden of proof to the Sheriff. In a criminal contempt proceeding, the contemnor has the right to be proven guilty beyond a reasonable doubt and cannot be compelled to " 'show cause.' " *Betts*, 200 Ill. App. 3d at 58-59; *Carpel*, 232 Ill. App. 3d at 823. In this case, however, SKS's motion to find the Sheriff in civil contempt, alternatively referred to as a motion for rule to show cause, required the Sheriff to appear in court and demonstrate why he should not be held in contempt and therefore improperly shifted the burden of proof to the Sheriff.

¶ 26    Finally, with respect to the denial of the Sheriff's right to a jury trial, we note that SKS points to a decision in which a party who was not afforded the right to a jury trial was found in indirect criminal contempt and fined over $500. See *Aurora Steel Products*, 94 Ill. App. 3d at 102. SKS notes that the court in that case reduced the fine to $500 and claims that the same remedy is appropriate in this case if we find that the Sheriff was denied his right to a jury trial. See *Aurora Steel Products*, 94 Ill. App. 3d at 103. However, *Aurora* did not hold that reduction of the fine is the remedy for the denial of a right to a jury in every circumstance. Instead, the court's decision to reduce the fine, as opposed to remand to the circuit court, was based on the unique circumstances of that case. See *Aurora Steel Products*, 94 Ill. App. 3d at 103. In this case, given the complete lack of procedural and constitutional rights afforded to the Sheriff, we conclude that the circuit court's order finding the Sheriff in contempt and imposing a fine must be reversed. See *Betts*, 200 Ill. App. 3d at 61 (where the defendant was found guilty of indirect criminal contempt, the court held that while the circuit court's failure to state on the record that it found the defendant guilty beyond a reasonable doubt might not itself require reversal, the additional denial of other constitutional rights required reversal).

¶ 27    The Sheriff next contends that the circuit court's finding of contempt was an abuse of discretion. However, we need not consider this claim in light of our conclusion that the finding of contempt must be reversed as a result of the complete denial of his due process rights.

¶ 28    The Sheriff's final contention is that the court's award of attorney fees was unwarranted and should be reversed. Although the circuit court's order awarding attorney fees does not state the basis for the award, SKS's motion for attorney fees was based upon it being the prevailing party in a "civil" contempt proceeding. Therefore, because we are reversing the court's finding of contempt, we also reverse the order awarding attorney fees to SKS. See *Freeman v. Myers*, 191 Ill. App. 3d 223, 228 (1989) (award of attorney fees could not stand where there was no finding of contempt).

¶ 29                                    CONCLUSION

¶ 30    For the reasons stated above, we reverse the orders of the circuit court of Cook County finding the Sheriff in contempt, fining him $1,400 and awarding attorney fees to SKS in the amount of $3,093.75. We find it unnecessary to remand this case to the trial court as the criminal contempt finding is reversed and the petition for rule to show cause seeking a finding of civil contempt has long been rendered moot.

¶ 31    Reversed.